BALDWIN *v.* NALL.

1. AUTOMOBILES—INTERSECTIONS—POSITION OF CARS AFTER ACCI-
DENT—EVIDENCE.
    The testimony as to position of cars after an accident is not
    conclusive as to where intersection collision took place, where
    witnesses could only state what they saw after the accident.

2. SAME—INTERSECTIONS—VERDICT—EVIDENCE.
    In action arising out of collision between plaintiff's northbound
    car and defendant's car as latter crossed from gasoline sta-
    tion at northwest corner of intersection, evidence was sufficient
    to justify jury's verdict for defendant.

3. TRIAL—VERDICT—EVIDENCE—ULTIMATE FACTS.
    If there is sufficient evidence to support a jury's verdict, a court
    will not set it aside even if it might be in doubt as to the ul-
    timate facts.

4. SAME—COLLOQUY BETWEEN COURT AND ATTORNEY—MISTRIAL.
    In action arising out of accident which occurred at a street in-
    tersection in midafternoon late in July, where a dispute be-
    tween the court and plaintiff's attorney arose as to whether or
    not some girls were leaving a school building near the in-
    tersection, the attorney declined court's offer to grant a mis-
    trial, and the jury rendered a verdict for defendant, plaintiff
    may not then claim error arising from the colloquy.

5. SAME—OPPORTUNITY TO CORRECT ERROR.
    A party cannot sit back and, after the jury decides against him,
    claim error after he had been given the fullest opportunity
    to correct the alleged error at the trial.

REFERENCES FOR POINTS IN HEADNOTES
[3] 3 Am. Jur., Appeal and Error, § 889.
[4, 5] 3 Am. Jur., Appeal and Error, § 873.
[6] 3 Am. Jur., Appeal and Error, §§ 1031, 1032.

6. APPEAL AND ERROR—DAMAGES—EVIDENCE—VERDICT FOR DE-
FENDANT.

    Plaintiff's claim of alleged error in the admission of evidence
        as to damages was without merit where jury did not give a
        verdict for plaintiff.

Appeal from Jackson; Simpson (John), J. Sub-
mitted October 8, 1948. (Docket No. 72, Calendar
No. 44,039.) Decided November 12, 1948.

Case by Leo Baldwin against David Nall for per-
sonal injuries sustained in an automobile accident.
Verdict and judgment for defendant. Plaintiff ap-
peals. Affirmed.

*Dahlem & Dahlem,* for plaintiff.

*Rosenburg, Painter & Navarre,* for defendant.

BUTZEL, J. Cars belonging to and driven by the
respective parties in this suit collided at the inter-
section of West Michigan avenue, 60 feet in width,
and Blackstone street, 30 feet in width, at Jackson,
Michigan, at 3:30 in the afternoon on July 26, 1943,
a bright, clear day. A gasoline station is located
on the northwest corner of the intersection, and
there is also a schoolhouse and grounds close to the
southwest corner of the intersection. Plaintiff
claims he was driving north on Blackstone street,
stopped when he reached the southerly line of Mich-
igan avenue, and waited there for the light to change.
When it changed to green he proceeded at second
speed on to West Michigan avenue, whereupon his
car was struck by defendant's car. He claims defend-
ant drove his car out from the gasoline station and
proceeded at a slant on the westerly side of Black-
stone street into the southeasterly quarter of the in-
tersection where he drove into plaintiff's car. Plain-
tiff claims that when he saw the course in which de-

fendant was driving his car, he tried to stop, that he could not turn east without running into the traffic which was coming westerly on West Michigan avenue and had stopped for the red light; that when he saw that he was in imminent danger, he made an unsuccessful effort to get out of his car but due to the impact, he was thrown against the wheel and then back into the seat, and thus suffered a severe and permanent sacroiliac sprain. He claims he suffered extreme pain and was incapacitated so that he could not assume his former vocation of running a gasoline and repair station because he could no longer bend at his work, which necessitated his bending over to make repairs. He claims that for this reason he was forced to sell his gasoline station for $5,000 less than it was worth. He also claims that he lost almost a year's time because of his injuries. The repairs to his car amounted to $125.47.

He testified that before proceeding across West Michigan avenue he looked north but did not see defendant who suddenly emerged from the gasoline station on to North Blackstone and turned southeasterly across Michigan avenue. He further claims that defendant stated at the time he was not looking toward plaintiff but was watching some girls who were coming from the school at the southwest corner of the intersection; also that defendant was given a ticket for an illegal turn by a police officer who arrived shortly after the accident.

Defendant, on the other hand, testified that he was not at fault, that he drove out of the gasoline station straight down Blackstone street into the West Michigan avenue intersection and stopped in the middle of the avenue with the wheels slightly turned toward the southeast, when he was struck by plaintiff's car. His own car was also damaged.

While it might be claimed that defendant did not categorically deny each one of plaintiff's claims, his

own version of the accident amounted to a denial. He further claimed that plaintiff was guilty of contributory negligence and particularly so in not seeing defendant's car when it was in plain view and in not turning toward the east and thus avoiding the collision.

The respective versions of the accident differ. Each party moved for a directed verdict on the question of liability. The judge held that it was a jury question. The jury brought in a verdict in favor of defendant.

Plaintiff on appeal claims the verdict was against the preponderance of the evidence. Evidently the jury did not place much credence in plaintiff's testimony. It is full of inconsistencies. He stated that the collision took place in the southeast corner of the intersection. His own witnesses indicated that the position of the cars after the accident indicated that it was in the northeastern quarter of the intersection. This, of course, is not conclusive as his witnesses could only state what they saw after the accident. Plaintiff himself claimed that his gasoline station produced a profit of $3,500 a year. His own auditor showed that the net profit was a little over one-half of this amount. Plaintiff described his pain and suffering but showed that in three months after the accident, he had purchased another gasoline station. Plaintiff further claimed that he went to the University Hospital at Ann Arbor, Michigan, where he remained over a week and was examined by half a dozen doctors. It was shown that no one could be examined by the University of Michigan doctors without his first registering at the hospital office. The records of the hospital showed that plaintiff had never registered. It was shown that plaintiff was only a lessee of the gasoline station, which he subsequently sold, and that the gallonage sold in the last half of 1943, which included a period

of over five months immediately after the accident, was the largest during plaintiff's proprietorship of the gasoline station.

It was further shown that he had been working for almost a year as a waiter in a tavern at the rate of $45 a week for $2,340 a year, when as a matter of fact the net profit for the gasoline station was much less than that amount.

A doctor who seemed to have a very large practice examined plaintiff and testified that plaintiff told him his trouble antedated the accident. While there is considerable testimony in plaintiff's favor, so that possibly some of us, were we on the jury, might have rendered a verdict for an amount in his favor, nevertheless there was sufficient testimony that would justify a jury in coming to a different result.

The leading case in Michigan which has often been quoted is that of *Woodin* v. *Durfee,* 46 Mich. 424, in which Mr. Justice COOLEY stated on behalf of the Court:

"But the difficulty is that the facts were not conceded or beyond dispute: There was evidence of them which probably ought to have satisfied anyone to whom it was addressed; but evidence is for the jury, and the trial judge cannot draw conclusions for them. It is said that on some points there was no evidence of a conflicting nature; but that does not aid the claimant. A jury may disbelieve the most positive evidence, even when it stands uncontradicted; and the judge cannot take from them their right of judgment."

If there is sufficient evidence tending to support the verdict, a court will not set it aside even if it might be in doubt as to the ultimate facts. See *Alley* v. *Klotz,* 320 Mich. 521, and the cases therein cited. We cannot say that the jury was not justified in coming to the result it reached. .

During the course of the trial, plaintiff stated that the intermediate school at the corner had "just let out." The court thereupon stated:

"You don't mean that the Intermediate School was in operation in July, do you?"

Counsel for plaintiff thereupon stated:

"They have summer school, your Honor. * * * They do have summer school there every summer, your Honor."

Whereupon the court stated:

"They don't have it in the afternoon."

And thereupon the witness stated:

"There was some coming out of there that day when this happened, some 50 of them. I don't know what the occasion was or anything about it."

Subsequently plaintiff's attorney called the court's attention to the court's remarks and made the statement not as a witness that the attorney had made some inquiries and had ascertained that they had swimming classes at the school all day during the hot months, and that he was willing to let the matter drop there. The court thereupon asked him what he wanted, "a mistrial or what?" Whereupon plaintiff's counsel stated:

"No. * * * But I don't want to get a trial of a collateral matter, but if counsel will concede that is true that they have swimming classes there—and everybody knows it."

Whereupon the court said that that was not a proper way to bring out testimony, that if he was going to make that statement, he should have asked that the jury be excluded, that it was absolutely out of order. Whereupon the court offered to grant plaintiff a mistrial. Plaintiff's counsel stated he

did not want a mistrial and that there was no need of going into a trial about that. Plaintiff's counsel then asked the privilege of bringing somebody, evidently some witness, and the court stated that he would not restrict him, that he could go ahead and try his case. The matter was thereupon dropped. A party cannot sit back and after the jury decides against him claim error after he had been given the fullest opportunity to correct any alleged error at the trial.

Further error is claimed in regard to the admission of testimony as to the value of the good-will of the oil station plaintiff claims he was forced to sell. Even if there were any merit to this claim, we need not consider the question as the jury did not even give plaintiff a verdict for the damage to his car. This amounted to a finding that defendant was not liable for any damages.

We have looked over the other claims of error made by plaintiff and find none of sufficient merit to require any further discussion.

Judgment for defendant is affirmed, with costs.

BUSHNELL, C. J., and SHARPE, BOYLES, REID, NORTH, DETHMERS, and CARR, JJ., concurred.